# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KENNETH A. QUITTMAN,** | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. RWT 10-3407 |
| **CHEVY CHASE VILLAGE,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff, Kenneth A. Quittman ("Quittman"), who was admitted to the Maryland bar in December of 1999[1], does not like automated speed monitoring systems, also known as "speed cameras." With the exception of this apparent aversion, Quittman's hodgepodge complaint against Defendant, Chevy Chase Village ("the Village"), is far from the model of clarity. Pending before the court is a flurry of motions filed by both parties, discussed in detail below.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, a speed camera operated by the Village photographed Quittman's automobile operating at a speed in excess of the posted speed limit, for which he received the required citation in accordance with the provisions of Maryland law. Compl. ¶ 25. Exercising his right to challenge the citation, Quittman elected to stand trial in the District Court of Maryland for Montgomery County, where he was found guilty. Quittman then pursued an appeal to the Circuit Court for Montgomery County where he was again found guilty by Judge Louise G. Scrivener. While the case was pending before Judge Scrivener, Quittman filed a number of motions, including one to remove the case to the civil department, a motion seeking reconsideration of the denial of his motion, a motion to dismiss the citation, a motion to compel,

---

[1] Quittman is not a member of the bar of this Court.

and a second motion to dismiss. After he was found guilty, he filed a motion for a new trial, which was denied. No appeal was taken by Quittman from his conviction for speeding as recorded by a speed camera. *See* docket in the Circuit Court for Montgomery County Criminal Case No. 113285c, *available at* http://casesearch.courts.state.md.us.

Approximately four and a half months later, on March 27, 2010, Quittman was operating his vehicle, apparently in or near the Village of Chevy Chase, when he had a near collision with a vehicle allegedly operated by a police officer employed by the Village. Compl. ¶ 5-6. There was, in fact no collision, but apparently Quittman waved at the Village's police officer and at some point thereafter the police officer activated emergency lights and initiated a traffic stop. Compl. ¶ 8-10. According to Quittman, the police officer employed by the Village was "seemingly polite and professional in manner, [but] offered no legal reason for initiating the stop or in any way suspecting Plaintiff reasonably of wrongdoing." Compl. ¶ 13.

On September 27, 2010, more than one hundred eighty days after the alleged incident of March 27, 2010, Quittman filed a complaint in the Circuit Court for Montgomery County. [ECF No. 2]. The complaint did not contain any provision alleging that the statutorily required notice under the Local Government Tort Claims Act had been provided to the Village. *See id.*

Quittman's complaint contained four separately numbered counts, together with a request for injunctive relief. *See id.* The counts of his complaint were labeled as follows: Count I – Negligent Infliction of Emotional Distress; Count II – Violation of Citizens' Rights, Intentional Infliction of Emotional Distress; Count III – Unjust Enrichment; Improper Impediment to Free Travel by Motorists; and Count IV – Invasion of Privacy. Compl. ¶ 5, 8, 18, 27.

Not surprisingly, the Village filed in the Circuit Court a motion to dismiss asserting a number of issues, which will hereinafter be discussed. [ECF No. 4]. In his opposition filed in

the Circuit Court, Quittman asserted that his complaint contained allegations of violations of the United States Constitution and of federal law. [ECF No. 5 at 3]. The Village responded by exercising its right of removal of the case to this Court. [ECF No. 1]. Having been alerted by Quittman's opposition to its motion to dismiss that he was asserting federal and Maryland constitutional claims, the Village filed in this Court an additional motion for a more definite statement of his claims. [ECF No. 6].

As he did in the District Court of Maryland for Montgomery County, Quittman has filed numerous pleadings in this Court, including a motion to remand to state court [ECF No. 12], a motion for default judgment [ECF No. 16], and a motion for sanctions [ECF No. 17]. The motions have been fully briefed and no hearing is required. *See* Local Rule 105.6.

## **ANALYSIS**

This Court has quoted with approval the observation of the late Chief Judge Richard Gilbert of the Court of Special Appeals of Maryland, who noted that procedural rules are:

> . . . the lawyer's compass and serve to help him steer through the narrows of pleading, pass the rocks of default, around the shoals of limitation, and safely into the harbor of judgment. It is a reckless sailor, indeed, who puts to sea without a compass, and it is a reckless lawyer who fails to familiarize himself with' the applicable procedure rules before filing and trying a case.

*Yvonne Whichard v. Specialty Restaurants Corporation*, 220 F.R.D. 439, 442 (D. Md. 2004) (quoting *Colonial Carpets, Inc. v. Carpet Fair, Inc.*, 36 Md. App. 583, 584, 374 A.2d 419, 420-21 (1977)). More recently, Judge James K. Bredar of this Court, employing a similar sailing analogy, observed that:

> [a]ttorneys are entitled, and sometimes even obligated, to sail into shallow waters as investigation and discovery reveal weaknesses in the factual and legal theories of a case. However, once the ship has not just bumped a shoal or two, but instead has collided with rocks and begun taking water, the voyage is over and counsel is required to drop his sails.

*Moody v. Arc of Howard County, Inc.*, Civil No. JKB-09-3228, 2011 WL 2671385, at *9 (D. Md. July 7, 2011).

Although *pro se* litigants are ordinarily given broad latitude in preparing and filing pleadings,[2] that is not the case with those who, like Quittman, have legal training and a license to practice law in this State. Unfortunately, Quittman's complaint is a hopeless hodgepodge of vague, inconsistent and overlapping allegations that utterly fails to comply either with the provisions of Maryland Rule 2-303 or Federal Rule of Civil Procedure 8. Despite this bumpy beginning and what should have been obvious subsequent setbacks discussed more fully below, Quittman has sadly not understood when to quit, or drop sails.

### A. Quittman's Motion to Remand

Quittman's motion to remand this case to the Circuit Court for Montgomery County is without merit and will be denied. As set forth in great detail in the Village's opposition [ECF No. 14 at pp. 4-8], Quittman's opposition to the Village's motion to dismiss filed in the Circuit Court made it quite clear that his jumbled and confusing complaint was, indeed, asserting causes of action under federal law, and he cannot now escape the consequences of asserting federal claims. He did so, and the case was properly removed to this Court.

Moreover, the removal was timely because it was initiated within thirty days after the filing of the Plaintiff's opposition to the Village's motion to dismiss in which the federal basis for his poorly pleaded claims was first articulated. *See* 28 U.S.C. §1446(b). The Defendant could not possibly have been required to remove the action to this Court upon any fair reading of the complaint as initially filed. As this Court has specifically noted, it is not necessary for a

---

[2] *See e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), *accord Haines v. Kerner*, 404 U.S. 519, 520 (1972).

defendant to "somehow divine" that a complaint is asserting a federal claim. *Hemphill v. Safeway, Inc.*, 430 F. Supp. 2nd 517, 519 (D. Md. 2006).

With the motion to remand resolved, it is now necessary for the Court to turn to the two motions filed by the Village, its motion to dismiss filed in the Circuit Court and its motion for more definite statement filed in this Court.

### B. The Village's Motion to Dismiss

The Village first contends that Quittman's state law tort claims should be dismissed because the requisite notice was not given to the Village within one hundred eighty days of the alleged incident of March 27, 2010, and certainly not within one hundred eighty days of Quittman's receipt of a citation based on a speed camera photograph in 2009. Moreover, there is no allegation in the complaint that such notice was given, and this is an omission that is not of little moment.

When the issue of failure to give the necessary notice under the Local Government Tort Claims Act was first raised by the Village, Quittman did not amend his complaint in the Circuit Court, nor has he amended it after its removal to this Court. The absence of an averment in a complaint that notice has been given is a *condition precedent* to the right to bring an action for tort claims against a local government such as the Village, and it is a condition precedent that must be specifically pleaded in the complaint. A failure to do so is fatal to a Plaintiff as was reiterated recently by the Court of Appeals of Maryland in its decision in *Hansen v. City of Laurel,* No. 78, Sept. Term 2010, 2011 WL 2731920 (Md. July 15, 2011).

However, even if all of the Plaintiff's tort claims against the Village were not barred by his failure to comply with the notice requirements of the Local Government Tort Claims Act, the state tort law claims are utterly groundless on their face. For example, Count I asserts a claim for

5

"negligent infliction of a emotional distress," a cause of action that has been specifically rejected in Maryland, something that would have been revealed to any reasonably competent lawyer who exercised any diligence in the preparation of a complaint. *Hamilton v. Ford Motor Company*, 66 Md. App. 46, 502 A.2d 1057, *cert denied* 306 Md. 118, 507 A.2d 631 (1986); *Williams v. Prince George's County*, 111 Md. App. 526, 685 A.2d 84 (1996); *Chew v. Paul D. Meyer, M.D., P.A.*, 72 Md. App. 132, 527 A.2d 828, *cert denied* 311, 286, 533 A.2d 1308 (1987).

By the same token, Count II asserts a claim for intentional infliction of emotional distress arising out of a near collision and a brief traffic stop initiated by an admittedly polite and professional police officer. A near collision followed by a brief meeting with a polite and professional police officer under no circumstances rises up to the extreme and outrageous conduct required under Maryland law for a viable claim of intentional infliction of emotional distress. While this tort has been recognized as a possible cause of action in Maryland, there has rarely been an appellate court decision rendered that found the circumstances sufficiently severe.

The decision in *Batson v. Shiflett*, 325 Md. 671, 735, 602 A.2d 1191, 1217 (1992) emphasized that the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct. Quoting from Restatement (Second) of Torts §46, comment d (1965), the court noted that, "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Moreover, the court reiterated that the degree of mental distress required is to be of a very serious kind. Under no circumstances could the facts as alleged by Quittman in this case be sufficient to constitute this cause of action. Moreover, any reasonable exploration of the case law on this subject would

have indicated that this is not a tort that would be appropriate under the circumstances of this case.

Count III includes a claim for unjust enrichment, apparently based upon the Village's operation of its speed monitoring system. The system operated by the Village is authorized by state law, and Quittman has already had more than his "day in court" in the State courts of Maryland at both the District Court and Circuit Court level in his multitude of challenges of the Village's program. Under no circumstances could a colorable claim for unjust enrichment be asserted under the facts of this case. Quittman's challenges to the system have been addressed and resolved adversely to him by Maryland's courts, and, moreover, a class action suit has determined that the system is valid. *See* Order Granting Defendants' Mot. Summ. J., Nov. 3, 2010, Docket No. 321 in *Baker, et al. v. Montgomery County, Maryland, et al.*, Circuit Court for Montgomery Civil Case No. 295902V (appeal pending), *available at* http://casesearch.courts.state.md.us.

Nor has the Plaintiff asserted a viable case for invasion of privacy, because there is no reasonable expectation of privacy while operating a motor vehicle on a public street. *Hollander v. Lubow*, 277 Md. 47, 351 A.2d 421 (1976) (quoting William Prosser, the Law of Torts, §814 (4th Ed. 1971); *See also Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 502 A.2d 1101 *cert denied* 306 Md. 289, 508 A.2d 488 (1986) (finding that non intrusive surveillance is simply not actionable.)

For the foregoing reasons, all of the Plaintiff's state tort law claims are not only barred by his failure to give the requisite notice under the Local Government Tort Claims Act, but also because they are utterly without merit.

### C. The Village's Motion for More Definite Statement

In his opposition to the Village's motion to dismiss, Quittman sought to "morph" his complaint into one asserting both federal and state constitutional law claims, prompting the Village to file a Motion for More Definite Statement. [ECF No. 6]. Although these claims are currently unintelligible, the Court will not preclude Quittman from attempting to assert them. Accordingly, the Village's Motion for More Definite Statement will be granted, and Plaintiff will be given an opportunity, one which he may not wish to pursue, to file an amended complaint within thirty days of the date of the Order being entered in connection with this Memorandum Opinion. The amended complaint, if any, shall articulate whatever causes of action Quittman may wish to pursue under the federal and/or state constitutions and shall be in strict conformity with the Federal Rules of Civil Procedure.

### D. Quittman's Motion for Default Judgment

The Plaintiff has also moved for a judgment by default against the Village. [ECF No. 16]. This motion is utterly frivolous and will be denied. First of all, by the Village's filing of a motion to dismiss in the Circuit Court, Maryland Rule 2-321(c) automatically extended the time for the Village to file an answer to thirty days after entry of the court's order on the motion. The federal analog is contained in Federal Rule of Civil Procedure 12(a)(4)(A). Moreover, the filing by the Defendant of a motion for more definite statement in this Court also extended the time for the filing of the Defendant's answer. *See* Fed. R. Civ. P. 12(a)(4)(B). It is apparent that Quittman gave no regard to the fairly simple commands of both the Maryland Rules of Procedure and the Federal Rules of Civil Procedure before filing this motion.

### E. The Village's Request for Sanctions

The Village seeks sanctions for the preparation of its opposition to Quittman's "frivolous" motions to remand and for default judgment. *See* ECF Nos. 14, 18. Maryland Rule 1-311(b) provides that "the signature of an attorney on a pleading or other paper constitutes a certification that the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information and belief there is good ground to support it; and that it is not interposed for improper purpose or delay." Even the most minimal level of legal research would have revealed to Quittman that the vast bulk of his complaint, if not its entirety, is utterly devoid of any merit and that his pleading was a jumbled, hopeless mishmash that utterly failed to comply with the basic rules of pleading set forth in Maryland Rule 2-303 and Federal Rule of Civil Procedure 8.

Under Maryland Rule 1-341, if the court finds that in a civil action that the "conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the cost of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it." Analogous provisions are contained in Rule 11 of the Federal Rules of Civil Procedure.

The Court concludes that the vast bulk of the Plaintiff's complaint, his opposition to the motion to dismiss, his opposition to the motion for more definite statement, his motion to remand, his motion for default judgment, and his motion for sanctions are wholly without merit.[3] Accordingly, the Court will enter an Order pursuant to Rule 11(c)(3), 28 U.S.C. § 1927 and its inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), directing Quittman to show cause why he should not be sanctioned for the conduct described in this Memorandum Opinion. In order to assist the Court in determining the appropriate sanction, should one be

---

[3] Quittman's motion for sanctions [ECF No. 17] will therefore be denied.

appropriate, the Court is directing the counsel for the Village to submit to the Court a statement of the fees and expenses that have been incurred to date in the defense of this action appropriately broken down so that the Court may consider the fees and expenses incurred by Village relating to the separate matters described in this Memorandum Opinion.

## CONCLUSION

To summarize, then, the Village's motion to dismiss will be granted as follows:

1. Count I of the complaint is dismissed with prejudice.

2. Count II is dismissed insofar as it asserts a claim for intentional infliction of emotional distress.

3. Count III is dismissed with prejudice as to claims made with respect to the Village's speed monitoring system.

4. Count IV is dismissed with prejudice as to the Village's speed monitoring system and state law claims for false light and right to privacy, and, without regard to the count where they may be found, all state tort law claims are dismissed with prejudice.

In addition, the Defendant's motion for more definite statement will be granted and the Plaintiff will be given thirty days within which to file an amended complaint containing a more definite statement of such federal and/or state constitutional claims as he may wish to assert. For the reasons stated above, Plaintiff's motions will be denied and he will be directed to show cause why sanctions should not be imposed within thirty days of the date of this order.

While the Court is granting the motion for more definite statement and giving the Plaintiff leave to file a complaint limited to state and federal constitutional claims, the Plaintiff is urged to consider the cautions noted by Judge Bredar in *Moody v. The Arc of Howard County,*

*Inc.* This may, perhaps, be an opportunity to exit from the stage without further harm inflicted on either the Defendant or the Plaintiff himself.


July 22, 2011                                                      /s/
                                                      Roger W. Titus
                                                      United States District Judge